OPINION OF THE COURT
Peter Tom, J.
The novel issue raised in this proceeding is whether the New York State Department of Social Services (State DSS) should forfeit its right of reimbursement for interim assistance benefits paid to a recipient when its subsidiary, the New York City Department of Social Services (City DSS), withholds Supplemental Security Income (SSI) checks, issued to the recipient, for more than 10 days in repeated violation of Federal and State statutes.
Petitioner Jose Baez (Baez) brings this CPLR article 78 proceeding to annul so much of a determination made after a fair hearing by the State DSS that denied petitioner the return of $14,187.05 retained by the City DSS from three SSI checks issued by the Social Security Administration (SSA).
Congress created the SSI program to provide financial assistance to the aged, blind and disabled. (42 USC §§ 1381-1383.) Due to the large number of applications for SSI which caused delay in processing eligible benefits, certain States, including New York, agreed to provide applicants interim assistance benefits during the period between the filing of an SSI application and the receipt of initial SSI benefits. To provide for a mechanism in which the State would be reimbursed for interim assistance benefits paid to SSI applicants, Congress promulgated the Interim Assistance Program (IAP) (42 USC § 1383 [g] et seq.). This program in essence provides that the State will be reimbursed from the initial SSI benefit payment issued to the SSI applicant. Under IAP, local agencies of the State may be reimbursed provided the State (1) enters into a reimbursement agreement with the Secretary of Health and Human Services (Secretary), and (2) obtains and forwards to the Secretary written authorization from the SSI applicant consenting to the withholding of the initial SSI check and pay the State an amount sufficient to reimburse it for interim assistance paid. (42 USC § 1383 [g] [1].)
In conjunction with the Federal statute, the State Social Services Law § 158 (a) provides that the State, upon agreement with the applicant, will be entitled to reimbursement from the applicant’s "initial payment”, which is defined as "the first payment of supplemental security income benefits *840 after a person files an application for benefits”. New York State regulations define "initial payment” as "the amount of SSI benefits determined by the Social Security Administration (SSA) to be payable to an eligible individual (including retroactive amounts, if any) at the time the first payments of SSI benefits are made” (18 NYCRR 370.7 [a] [2]).
The local agencies are further obligated under Federal and State statutes to provide the SSI applicant with an account of the amount deducted for reimbursement and payment of any excess above the interim assistance benefits received, within 10 working days of receipt of the initial SSI benefit check. Under Federal statute, payments due applicant must be made "as expeditiously as possible, but in any event within ten working days” (42 USC § 1383 [g] [4] [A]; 20 CFR 416.1910 [b] [1]). Pursuant to State regulation, 18 NYCRR 370.7 (c) (4) provides "[wjithin 10 working days after receipt of an initial payment, the local social services district shall send the balance of the initial payment, if any, to the recipient.”
In the instant case, petitioner Baez applied for SSI disability benefits on September 16, 1980 and his application was subsequently denied on October 31, 1984. He then reapplied in October 1988.
Upon review of both of Baez’s applications, the SSA made a determination in September 1989 that Baez was indeed disabled, but only from June 10, 1986, from which date he was entitled to retroactive benefits. Petitioner filed an appeal with SSA concerning the date of the onset of his disability.
While Baez’s SSI application was still pending, he received interim home relief benefits from the State DSS after executing a written authorization to reimburse the State from his initial SSI payment, pursuant to State Social Services Law § 158 (a).
After the approval of petitioner’s SSI application, SSA, pursuant to the reimbursement agreement with the State, sent to the City DSS five checks as retroactive SSI payments intended for Baez.
The first two checks, dated December 4, 1989 and December 13, 1989, covered the periods from June 10, 1986 through March 31, 1988, and April 1, 1988 through November 30, 1989, respectively. The City DSS notified petitioner within six days of receiving the December 4, 1989 check that it was retaining the entire amount of that check, which was $8,953.65, as interim assistance reimbursement. The City DSS *841 informed petitioner that it was retaining the entire $8,827.19 from the second check within 11 days of its receipt by the agency, but later, after recalculation, sent Baez a check for $6,407.90 as partial return on the second check.
On February 26, 1992, petitioner prevailed on his appeal to the SSA, which now found Baez to have been disabled since September 16, 1980. The SSA also found Baez to be entitled to further retroactive benefits amounting to $23,973.55, which it issued in three separate checks.
The City DSS received the first of the new checks, for $8,062.96, on May 13, 1992. After 18 working days DSS informed Baez that it had retained the full amount of that check. The City DSS withheld $3,704.80 of the second check which was dated May 15, 1992 and was made out in the sum of $7,998.02. The refund was issued to petitioner within 17 working days of the City DSS’ receipt of the check. The final check in the sum of $7,917.57, which was dated May 18, 1992, was released in full to Baez within 17 working days of its receipt by City DSS.
Baez thereafter requested a fair hearing from the State DSS on or about July 1, 1992 and argued that the City DSS had no right under the applicable law to recover any portion of the three SSI checks which it retained for more than 10 working days, and had no right to recover interim assistance benefits from any but the very first check sent to the City DSS by SSA in December 1989, notwithstanding whether the later checks had been timely processed. The State DSS upheld the City DSS’ right to reimbursement from the SSI checks, but also directed the City DSS to review its records in order to recalculate the amount of home relief Baez had obtained so as to issue him a further refund, if appropriate. As of this date, the City DSS has not made the recalculation called for in the determination made after fair hearing.
In this petition Baez challenges the State DSS determination that: (1) the City DSS was entitled to recover interim home relief benefits from any SSI checks which it held for more than 10 days; and (2) that the City DSS was entitled to retain any part of any but the first SSI check it received on petitioner’s behalf. Baez seeks an order directing the State DSS to refund to petitioner the sum of $14,187.05 representing funds erroneously retained by the City DSS from SSI checks issued to petitioner by SSA on December 13, 1989, May 13, 1992 and May 15, 1992. Petitioner also seeks interest and attorney’s fees.
*842 Baez maintains that the application of the statutory and regulatory provisions must result in his receiving a complete refund of the balance of all of the checks which followed the City DSS’ receipt of the December 4, 1989 check, which, he claims, was the only "initial payment” he received, and the only check which the City DSS managed to process within 10 working days, making it the only check from which reimbursement by the City DSS could be had.
The City DSS has answered the petition, and vigorously opposed it, on the grounds that all of the checks together amounted to petitioner’s "initial payment”, making all of the checks available to the City DSS from which to seek reimbursement, and that no law or regulation mandates the return of petitioner’s entire check upon the City DSS’ failure to meet the 10 working day requirement. The City DSS argues that petitioner must be denied a double, or "windfall”, recovery regardless of the City DSS’ own lack of care.
The State DSS being the parent agency has responded differently.
In an affidavit submitted by the office of the Attorney-General, the State DSS’ counsel, it is noted that the right of petitioner "to recover any interim assistance from * * * Supplemental Security Income CSSF) checks held by City respondent for more than ten working days” has been "previously addressed by the Southern District in Rivers v Schweiker, 523 F. Supp. 783, 789 (S.D.N.Y. 1981), aff'd 692 F2d 871 (2d Cir. 1982), cert. denied, 460 U.S. 1088 (1983).”
The affidavit goes on to state that: "[b]ased upon a review of the Rivers decisions, this office has determined that it will not submit opposition to so much of the relief as seeks a refund of any interim assistance held by City respondent for more than ten working days. However, we oppose granting payment of interest on these funds since there is no basis in law for that relief.”
The affidavit concludes: "[i]n light of the foregoing and City respondent’s stated opposition to granting this relief, we respectfully suggest that this matter be marked off-calendar on the condition that City respondent forthwith apply to the federal court for clarification of its obligations under Rivers. ”
Rivers v Schweiker (supra) was a class-action suit brought by a group of SSI applicants and recipients to object, inter alia, to the State and City DSS’ practice of retaining initial SSI benefit checks beyond 10 working days prior to processing the *843 checks and refunding the excess over the State’s interim benefits reimbursement to the SSI recipient. The class-action plaintiffs sought an order requiring the agencies to comply with the 10-day statutory period or forfeit the entire check to the recipient.
The Rivers court found that the City DSS’ chronic delay in processing the initial payments was "clearly forbidden by the federal, state and local regulations and cannot be tolerated by this court.” (Supra, at 789.) Expressing, "this court’s duty” to hold the defendants to their statutory obligation, the Rivers court held that "[w]hether or not the NYCDSS is able to reimburse itself within the ten day period, it must comply with the law and forward the SSI check to the individual upon the expiration of ten working days”. (Supra.)
The class-action plaintiffs in the Rivers case (supra) contend that the delay in remitting their SSI checks was detrimental to their livelihood and often debts had to be incurred to avoid eviction and utility shut-offs.
The Rivers court did not order the City DSS to refund to the plaintiff the entire amount of any checks held more than 10 days, despite the implication in the language quoted above that such relief would follow the agency’s failure to reimburse itself in the 10 days provided. Instead the court ordered the defendants "to process the plaintiffs’ SSI benefit checks and forward the excess over the reimbursement amount to plaintiffs within the statutory period.” (Supra.)
Upon appeal the trial court’s decision not to grant an injunction compelling the forfeiture of the entire initial payment upon the agency’s failure to meet its 10 working day requirement was upheld. The United States Court of Appeals for the Second Circuit found no abuse of discretion on the part of the trial court in denying injunctive relief because of the inclusion in the court’s order of a system for monitoring the defendants’ compliance in the future (692 F2d 871, 874). The appellate court expressed its confidence that, under the circumstances of the lower court’s order, rule 70 of the Federal Rules of Civil Procedure would provide plaintiffs with the necessary relief should the defendants fail to comply with the court’s order.
While the State respondent herein clearly believes that resolution of the petition can be found in Rivers v Schweiker (supra), the State DSS does not, apparently, concede that Baez is necessarily entitled to the relief of a full refund of all *844 monies held by the City DSS in excess of 10 days. The State DSS is looking for guidance as to the effect of Rivers on the present proceeding, either because it believes that Rivers has precedential effect, or is directly binding upon the State and City respondents herein. Baez does not fall into the class of SSI recipients in Rivers, all of whom had been granted their SSI benefits when the action was concluded.
If Baez is entitled to a refund of any monies which were held by the City DSS in excess of 10 working days, then he is entitled to the return of all funds held by the City DSS after its legal retention of the first check sent to it in 1989. There is no dispute that the four subsequent checks were processed in violation of the 10-day requirement (42 USC § 1383 [g] [4] [A]; 20 CFR 416.1910 [b] [1]; 18 NYCRR 370.7 [c] [4]; Rivers v Schweiker, supra, at 789). The threshold issue then is whether the foregoing statutory and regulatory scheme requires that checks which are not processed in a timely fashion be forwarded to the SSI recipient in full, and whether the written decision of the State DSS following a fair hearing, to the effect that Baez’s arguments for a full refund of all sums held over 10 working days is "not persuasive”, is a rational interpretation of the law (see, Matter of Ista Mgt. v State Div. of Hous. & Community Renewal, 161 AD2d 424, 426). If, in fact, a refund is required due to the processing delay, then the issue of what constitutes an "initial payment” need not be reached.
As both petitioner and the City DSS point out, the decision in Rivers (supra) does not specifically authorize the return of any part of the delayed checks beyond the excess over the reimbursable amount, but then, neither does it preclude such relief. In fact, the trial court’s interpretation of the law as requiring the City DSS to forward the SSI checks to the individual upon the expiration of 10 working days whether or not the agency has managed to process its reimbursement leads naturally to the conclusion that, under different circumstances, the court might have ordered the full refund of unprocessed checks after the statutory time period.
This likelihood is made manifest by the Circuit Court’s decision to uphold the propriety of the grant of the more limited relief, based on the plaintiffs retention of a remedy under rule 70, which, according to the court, allows the lower court, upon application of a party, to "divest title in property within the jurisdiction of the court and vest it in others”, if the defendants proved recalcitrant (Rivers v Schweiker, supra, *845 at 874). Surely, the foregoing speaks of the very relief which the plaintiffs had originally sought, specifically, the refund.
The State’s right to reimbursement under the Interim Assistance Program is recognized to be a discrete exception to the established rule forbidding attachment of SSI benefits (see, 42 USC §§ 407, 1383 [d] [1]). The Federal and State laws pertaining to the State’s right to reimbursement are necessarily circumscribed. For example, the reimbursement is to come from the "first payment of benefits” (42 USC § 1383 [g]), and there is no authorization in law for reimbursement from checks which are not part of the "initial payment” even if the State has not managed to recoup its entire interim benefits payout. This is also clearly set forth in Social Services Law § 158 (a).
Also among the limitations is the proviso that the State "shall” pay the balance of the initial payment in excess of the reimbursable amount "as expeditiously as possible, but in any event within ten working days” (42 USC § 1383 [g] [4] [A]).
The City DSS admits that it has no right to reimbursement from checks which are no longer in its possession. The statutory and regulatory scheme cited above, and at issue in Rivers v Schweiker (supra), establishes that the agency has no right to possession of SSI checks sent as a recipient’s initial payment, beyond 10 working days. Upon expiration of the statutory period, the right of retention and recoupment of the SSI benefits payment by the State extinguishes and the possessory right of the SSI check reverts back to the SSI recipient. Consequently, this court finds that the City DSS has no right to reimburse itself from checks which it had no right to possess, i.e., those which it held without processing for more than 10 working days. Since the City DSS has no right to reimburse itself from checks held beyond the statutory limit, it follows that these checks must be forwarded, in full, to the SSI recipient.
The City DSS maintains that, despite its own admitted violation of the law, a full refund to Baez of all monies held by it beyond 10 working days cannot be permitted because it would result in his obtaining a "windfall” in the form of double benefits. The City DSS relies on case law which recognizes that, " 'a local social services agency is authorized to seek recoupment of aid paid a recipient whenever it discovers the recipient to be in possession of a windfall’ ” (Matter of Verbal v Perales, 176 AD2d 805, 807, citing to Matter of Lutz v Amrhein, 151 AD2d 672, 674).
*846 In neither Verbal nor Lutz (supra), wherein the SSI recipients claimed against the weight of the evidence, that they had not authorized the City DSS to reimburse itself from the individual’s initial payments, was there any indication that the City DSS had itself acted in violation of the law and created the "windfall” in question.
In both of these cases, as in the present case, the agency "discovered” the double payment of benefits when it received the individual’s initial SSI payment. The agencies possessed at that moment only a limited right to reimbursement, not one which arose from the mere happenstance that through the agencies’ own negligence they were in possession, in violation of law, of property belonging to the SSI recipient.
The City DSS in the proceeding herein failed to comply with the legal requirements for reimbursement. Refund to Baez of the entire balance of the three out of five SSI checks received by the agency will not result in the recovery by him of a "windfall”, but in the recovery by him of SSI benefits to which he was legally due, and from which the City DSS failed, through its own delay, and/or neglect to provide. Indeed, to allow the City DSS to flaunt the law, as appears to be its practice with this process, and permit it reimbursement at its leisure, would be to grant the "windfall” recovery to the agency.
Further, the delay in remitting SSI benefit checks may have a detrimental effect upon the safety and welfare of aged and disabled recipients who subsist on limited income.
Because the determination of the State DSS denying petitioner a refund for all SSI payments held by the City DSS for more than 10 working days is contrary to the statutory and regulatory scheme, it must be annulled, and a refund granted to petitioner. This relief is warranted by CPLR 7803 (3), because the refund is incidental to the annulment of the State DSS’ decision of the fair hearing (see, Matter of New York State Assn. of Homes & Servs. for Aging o Perales, 179 AD2d 296). The return of the full SSI payment, excepting the initial check, follows from the City DSS’ failure to comply with the law. The court notes that the State DSS has always been aware of the City DSS’ failure to comply with the law. In the decision after fair hearing the State DSS denied petitioner the refund he sought, but felt compelled, nevertheless, to "remind” the agency of its obligations under 18 NYCRR 370.7.
While the Legislature has failed to provide any guidance *847 regarding what sanctions should be imposed upon a finding that the statutes and regulations in question have been violated, it is clear at this juncture that the City has repeatedly violated the time restraints statutorily imposed upon it and has previously been found responsible for these same violations by two Federal courts. As outlined above, while the Federal decision declined to impose the sanctions that this court now chooses to adopt, the Court of Appeals for the Second Circuit clearly indicated that such a result was viable (see, Rivers v Schweiker, 692 F2d 871, 874, supra). The Second Circuit has stated, in essence, that if the City continues to violate the mandates of the law, the SSI recipients may seek to forfeit the State’s right of reimbursement which result is in line with the present ruling of this court.
There is no problem or question of the limits of mandamus in the present situation.
Lastly, although the petitioner is entitled to annulment of the decision of the State DSS as set forth herein, he has cited no authority for an award of interest, or of attorney’s fees pursuant to 42 USC § 1983 or CPLR 8600 in the present circumstances, and these requests are denied.
Accordingly, the petition is granted as set forth herein.