[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Marie Mastronunzio appeals the decision of the CT Page 10778 defendant Commissioner of Public Health that a finding of resident abuse shall be placed on the Connecticut Nurse Aide Registry under the name of Marie Mastronunzio. The court finds the issues in favor of the defendant.
The plaintiff is a certified nurse's aide listed on the Connecticut Nurse's Aide Registry. From approximately January 1990, to December 22, 1993, the plaintiff was employed as a nurse's aide at the Greenery Rehabilitation Center (the Greenery), which is a skilled nursing facility that holds a valid license as a chronic and convalescent nursing home with the department of Public Health (the department).
On November 27, 1995, the department served the plaintiff with a Statement of Charges pursuant to General Statutes §§19a-9, 19a-14, and 42 U.S.C. § 1395i-3 (g) (1) (C). The Statement contained three counts of neglect and two counts of verbal abuse. After a number of continuances, a hearing was held on July 24, 1996. On that date the department withdrew one count of neglect. At the end of the day, the department requested a continuance of two months in order to obtain judicial enforcement of a subpoena which was served on Ewan Francis, a certified nurse's aide employed at the Greenery. The hearing officer granted the request and continued the hearing to September 25, 1996. On September 25, 1996, the Department requested a further continuance for the same reason and, upon objection by the plaintiff, the hearing officer denied the request. The hearing concluded on September 25, 1996. On December 18, 1996, the hearing officer issued her final decision dismissing all but one count of abuse against the plaintiff.
The hearing officer found that the department "sustained its burden of proof with regard to the allegations contained in the First Count that the Respondent verbally abused resident Edith Levinson by making anti-Semitic remarks in her presence." She further found:
 The statements the Respondent made to Ms. Levinson, an elderly Jewish woman who had lost family members in the Holocaust, were anti-Semitic and abusive. Accordingly, the facts as found for the First Count justify a finding of resident abuse against the Respondent on the Connecticut Nurse's Aide Registry pursuant to 42 U.S.C. § 1395i-3 (g) (1) (C) and Conn. Gen. Stat. § 20-102cc. CT Page 10779
(ROR Vol I pp. 16-17). Pursuant to those findings, the hearing officer ordered the Connecticut Nurse's Aide Registry listing for Marie Mastronunzio to contain a finding of resident abuse.[1] (ROR Vol. I p. 17).
The plaintiff filed this appeal claiming that there was insufficient evidence to support the finding that she verbally abused Levinson. Specifically, the plaintiff argues that the only evidence presented to the hearing officer was inadmissible hearsay that should be accorded no weight. In her brief, she argues that the hearsay evidence was inadmissible. The court has reviewed the record and finds no objections at the time of proffer of any of the evidence the plaintiff questions now.[2]
Accordingly, the court reviews the hearing officer's decision under (5) of § 4-183 (j) to consider whether there is "reliable, probative, and substantial evidence on the whole record" to support the decision.
The hearing officer made the following findings that underlie the ultimate finding of abuse at issue here.
 5. On or about December 17, 1993, the following events occurred at the Greenery:
 a. Ms. Levinson and the Respondent were in the smoking lounge on the West 2 Unit of the Greenery. Residents had to rely on the staff person in the smoking room to light their cigarettes because residents were not allowed to carry matches or lighters.
 b. When Ms. Levinson asked for a light for her cigarette, the Respondent told Ms. Levinson, "I'm the Gestapo" and "Heil Hitler." She then told Ms. Levinson "I'm going to cremate you in your bed."
 c. Ms. Levinson was crying and visibly upset when she related these remarks to Yolanda Smith, a nurse's aide at the facility, after the incident on December 17, 1993, and to Dorothy Boyles, then Director of Nursing at the facility, on December 21, 1993.
d. The statements, "I'm the Gestapo," "Heil CT Page 10780 Hitler," and "I'm going to cremate you in your bed," made by the Respondent to Ms. Levinson in the facility's smoking room as Ms. Levinson was asking for her cigarette to be lit, were anti-Semitic.
Findings 5a and that part of 5d characterizing the alleged remarks as anti-Semitic are not in dispute in this appeal. The plaintiff claims that there was insufficient evidence for the hearing officer to find that she had uttered such remarks.
This court's review of an administrative appeal is limited. "Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions." Connecticut Light Power v. Dept. of PublicUtilities Control, 219 Conn. 51, 57, 591 A.2d 1231 (1991);Woodbury Water Co. v. Public Utilities Commission,174 Conn. 258, 260, 386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures.Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587,628 A.2d 1286 (1993); Lieberman v. State Board of Labor Relations,216 Conn. 253, 262, 579 A.2d 505 (1990); Baerst v. State Board ofEducation, 34 Conn. App. 567, 571, 642 A.2d 76, cert. denied,230 Conn. 915, 645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v. Commissioner of Social Services,38 Conn. App. 522, 525-26, cert. denied, 235 Conn. 906 (1995).
The hearing officer had before her the following evidence to support her findings. Three witnesses testified: Yolanda Smith, a certified nurse's aide employed at the Greenery, Dorothy Boyles, a nurse consultant who was director of nurses at the Greenery from September 1993, to May 1997, and the plaintiff Marie Mastronunzio. Documentary evidence included copies of unsworn statements from Boyles' investigation (ROR Vol. I pp. 33-80): Emma Jackson (p. 61); Smith (p. 62) and Francis (p. 63).
Smith testified that on Friday evening, December 17, 1993, she greeted Levinson in the hallway. Levinson told her that while in the smoking room a female aide had said to her "I'm the Gestapo," "Heil Hitler" and "I'm going to cremate you in your bed." Smith described Levinson as a woman, "maybe 60 or better," in a wheelchair. Smith recalled a subsequent encounter with Levinson when she told her about the remarks again. Smith never CT Page 10781 took care of Levinson. and her knowledge of her emotional mental capacity was limited. She recalled that Levinson was crying and visibly upset on December 17, 1993.
Boyle testified that during December 1993, she was nursing supervisor at the Greenery and thus had overall responsibility for the facility. She recalled Levinson as a resident in the geriatric unit who was wheelchair bound and very verbal. She required physical care but could feed herself. As to Levinson's mental state, Boyle testified that she was alert "but often confused." (ROR Vol III p. 126). Boyle recalled Levinson suffered a bipolar disorder which caused her to talk a lot, "you might call it rambling." According to Boyle, Levinson's medical record reveals that she is Jewish and that she lost a number of family members to the Holocaust. She recalled that Levinson transferred to another facility in 1994. Boyle testified to receiving a written complaint from Francis, on December 20, 1993. As a result of that complaint, Boyle initiated an investigation of the plaintiff's anti-Semitic remarks to Levinson. Boyle interviewed Francis, Jackson, Smith, the plaintiff and Levinson. Boyle identified a written statement from Jackson, a licensed practical nurse who was in charge of Levinson's unit.
Boyle also testified that she met with Levinson on December 21, 1993, and that Levinson told her she was afraid for her life, that "she was going to get burnt up when she went to sleep," and related this to the December 17, 1993 incident. Levinson could not remember the name of the aide but identified the plaintiff by sight to Boyle and became visibly upset and began crying. Boyle interviewed the plaintiff who denied making any kind of anti-Semitic remark. After discussing the results of her investigation with the administrator of the building, Boyle decided to terminate the plaintiff on December 21, 1993.
The plaintiff claims that Boyles' testimony, Smith's testimony, the Jackson statement and the Francis statement are inadmissible as hearsay and cannot be used as a basis for the hearing officer's decision. While there are different levels of hearsay and different degrees of reliability in that evidence, under the law of this state, the hearing officer could consider and weigh this evidence in reaching her decision
In Tomlin v. Personnel Appeal Board, 177 Conn. 344, 348
(1979), the Supreme Court recognized the use of hearsay evidence in agency hearings. CT Page 10782
 We note first that administrative tribunals are not strictly bound by the rules of evidence and that they may consider evidence which would normally be incompetent in a judicial proceeding, as long as the evidence is reliable and probative. Lawrence v. Kozlowski, 171 Conn. 705, 710, 372 A.2d 110, cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977); Balch Pontiac-Buick. Inc. v. Commissioner of Motor Vehicles, 165 Conn. 559, 570, 345 A.2d 520 (1973). There is moreover no specific prohibition against hearsay evidence in the Uniform Administrative Procedure Act, which provides that "[a]ny oral or documentary evidence may be received, but [that] the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence." General Statutes § 4-178 (1).
Further, in Cassella v. Civil Service Commission,4 Conn. App. 359, 364, (1985), aff'd, 202 Conn. 28 (1987), the Appellate Court thoroughly reviewed the precedents, both state and federal, on establishing the trustworthiness of hearsay evidence in administrative proceedings. Citing the factors set forth inRichardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420,28 L.Ed.2d 842 (1971), the Cassella court found that the due process rights of the plaintiff had not been violated by the use of hearsay evidence. The court there considered those four factors: 1) the availability of the witness declarant; 2) the lack of bias or interest on the part of the witness declarant; 3) the quality and probative value of the out of court statements; and 4) the nature and atmosphere of the proceeding. Cassella v. CivilService, supra, 4 Conn. App. 364.
Under the deferential review afforded agency decisions, this court finds that there is substantial evidence for the hearing officer to reasonably infer that the plaintiff had made anti-Semitic remarks to Levinson. Substantial evidence is that evidence that affords "a substantial basis of fact from which the fact in issue can be reasonably inferred."(Citations omitted; internal quotation marks omitted.) Dolgner v. Alander,237 Conn. 272, 281 (1996). "It must be enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it was one of fact for the jury." (Citations omitted; internal quotation marks omitted.) CT Page 10783Lawrence v. Kozlowski, 171 Conn. 705, 713 (1976).
Boyles' investigation file, her testimony and Smith's testimony provide the basis. That testimony, while hearsay, is sufficiently trustworthy. Moreover, the Commissioner's efforts to present the testimony of Francis were first slowed by Francis and ultimately blocked by the plaintiff. (ROR Vol. III pp. 32-36). The plaintiff argued against a continuance, asserting in part that Francis was neither a material nor critical witness to the case. (ROR Vol. III p. 32). The written statement of Francis suggests that Francis heard the plaintiff make the anti-Semitic remarks to Levinson. In effect, the plaintiff waived the opportunity to cross examine Francis. Under Carlson v.Kozlowski, 172 Conn. 263, 267 (1977), "[i]f hearsay evidence is insufficiently trustworthy to be considered `substantial evidence' and it is the only evidence probative of the plaintiff's culpability, its use to support the agency decision would be prejudicial to the plaintiff, absent a showing . . .that the appellant knew it would be used and failed to ask thecommissioner to subpoena the declarants." (Emphasis added.) Here, we have other evidence probative of the plaintiff's culpability, and the plaintiff objected to the Commissioner's attempts to present live testimony by the declarant Francis.
The appeal is dismissed.
DiPentima, J.